**RECORD NO. 16-4773**

# In The
# United States Court Of Appeals
# For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## GLORIA PATRICIA TAYLOR,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT**

————————

## BRIEF OF APPELLANT

————————

**Jason G. Downs**
**Rima A. Kikani (*Admission Pending*)**
**MURPHY, FALCON & MURPHY, P.A.**
**One South Street, 23rd Floor**
**Baltimore, MD  21202**
**(410) 951-8744**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

# **TABLE OF CONTENTS**

**Page**:

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE.................................................................3

    I.    Factual History .............................................................3

    II.   Procedural History.........................................................6

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ......................................................................................10

    I.    The Government Did Not Meet Its Burden Of Establishing Ms. Taylor's Written Statement Was Given Free From Coercion Where The Officers Were Untruthful In Telling Ms. Taylor Her Son Could Be Arrested On September 30, 2014 ................................10

        A.    Standard of Review.................................................10

        B.    Threatening Ms. Taylor with the arrest of her son without probable cause rendered Ms. Taylor's written statement the product of coercion ...........................................11

        C.    Ms. Taylor's coerced written statement remains involuntary because the officers could not have carried out the threat of arresting Mr. Smith................................15

    II.   An Improper Exhibit Sent To The Jury During Deliberations Violated Ms. Taylor's Sixth Amendment Right To An Impartial Jury ..........................................................21

        A.    Standard of Review.................................................21

i

B.    The District Court erred by not requiring the Government to meet its burden of proof that the exhibit was harmless ........21

III.    This Court Should Overturn The District Court's Sentence Because The Court Established An Incorrect Base Offense Level In Violation Of U.S.S.G. § 2D1.1(c)(5), Imposed An Improper Two-Level Enhancement Not Supported By The Facts In This Case, And Issued A Forfeiture Order Premised On Mere Speculation ..........................................................................23

A.    Standard of Review..................................................23

B.    The District Court improperly began its sentencing calculations at a Base Offense Level of 32, because the jury convicted Ms. Taylor of only possessing over 1,000 kg of marijuana, which, pursuant to U.S.S.G. § 2D1.1(c)(5), sets the Base Offense Level to 30 ......................24

C.    The District Court improperly added a two-level sentence enhancement for obstruction of justice because Ms. Taylor's testimony in question was not made falsely or with a willful intent to deceive.................................................29

D.    The District Court improperly calculated a forfeiture amount of $3,747,750.00 because it speculated the presence and weight of marijuana in the shipments the Government failed to seize ......................................................31

CONCLUSION.........................................................................33

REQUEST FOR ORAL ARGUMENT .................................................34

ADDENDUM ...........................................................................35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ii

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Allen v. McCotter,*
　　804 F.2d 1362 (5th Cir. 1986) ...................................................15

*Alleyne v. United States,*
　　133 S. Ct. 2151 (2013)...................................................26, 27

*Apprendi v. New Jersey,*
　　530 U.S. 466 (2000).................................................2, 9, 25, 26

*Beck v. State of Ohio,*
　　379 U.S. 89 (1964)........................................................19

*Blakely v. Washington,*
　　542 U.S. 296 (2004)......................................................26

*Gall v. United States,*
　　552 U.S. 38 (2007)........................................................23

*Irvin v. Dowd,*
　　366 U.S. 717 (1961).......................................................21

*Lynumn v. Illinois,*
　　372 U.S. 528 (1963)..............................................11, 12, 13

*Miller v. Fenton,*
　　474 U.S. 104 (1985)......................................................10

*Taylor v. Waters,*
　　81 F.3d 429 (4th Cir. 1996) ...........................................16

*Thompson v. Haley,*
　　255 F.3d 1292 (11th Cir. 2001) ......................................15

*United States v. Andrews,*
　　847 F. Supp. 2d 236 (D. Mass. 2012).............................16

*United States v. Barnes*,
    747 F.2d 246 (4th Cir. 1984) .......................................................................21

*United States v. Bolin*,
    514 F.2d 554 (7th Cir. 1975) .......................................................................15

*United States v. Brookins*,
    345 F.3d 231 (4th Cir. 2003) .......................................................................10

*United States v. Curry*,
    523 F.3d 436 (4th Cir. 2008) .......................................................................23

*United States v. Everroad*,
    704 F.2d 403 (8th Cir. 1983) .......................................................................17

*United States v. Finch*,
    998 F.2d 349 (6th Cir. 1993) .......................................................................15

*United States v. Greene*,
    834 F.2d 86 (4th Cir. 1987) .........................................................................21

*United States v. Johnson*,
    351 F.3d 254 (6th Cir. 2003) .......................................................................15

*United States v. Lentz*,
    383 F.3d 191 (4th Cir. 2004) .......................................................................21

*United States v. Memoli*,
    333 F. Supp. 2d 233 (S.D.N.Y. 2004) ........................................................15

*United States v. Ortiz*,
    499 F. Supp. 2d 224 (E.D.N.Y. 2007) ...................................................15, 20

*United States v. Ortiz*,
    943 F. Supp. 2d 447 (S.D.N.Y. 2013) ....................................................16, 20

*United States v. Perez*,
    661 F.3d 189 (4th Cir. 2011) .......................................................................29

*United States v. Promise*,
   255 F.3d 150 (4th Cir. 2001) ..................................................................25, 26

*United States v. Tingle*,
   658 F.2d 1332 (9th Cir. 1981) ......................................................................14

**Statutes:**

18 U.S.C. § 3231 ..................................................................................................1

18 U.S.C. § 3742(a) ..............................................................................................1

21 U.S.C. § 841 ................................................................................................6, 7

21 U.S.C. § 841(b)(1)(C) ....................................................................................25

21 U.S.C. § 843(b) ...........................................................................................6, 7

21 U.S.C. § 846 ................................................................................................6, 7

21 U.S.C. § 853 ....................................................................................................6

28 U.S.C. § 1291 ..................................................................................................1

**Constitutional Provisions:**

U.S. Const. amend. IV .......................................................................................16

U.S. Const. amend. V .........................................................................................11

U.S. Const. amend. VI...........................................................................2, 9, 21, 26

**Sentencing Guideline:**

U.S.S.G. § 2D1.1(c)(5) .................................................................................*passim*

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a criminal case entered against Gloria Patricia Taylor, Defendant-Appellant, on November 17, 2016. The United States District Court for the District of Maryland had original subject-matter jurisdiction over this case pursuant to 18 U.S.C. § 3231 because Ms. Taylor was charged with a crime against the United States of America. The United States Court of Appeals for the Fourth Circuit has appellate jurisdiction over this case under 28 U.S.C.A. § 1291, which delegates the courts of appeals jurisdiction over appeals from final decisions of the district courts of the United States, and 18 U.S.C. § 3742(a), which allows this Court to review a final sentence of a district court.

Ms. Taylor filed a timely Notice of Appeal on November 21, 2016. This Court issued a Briefing Order on December 12, 2016, and upon a Consent Motion to Extend Briefing Deadlines filed by Ms. Taylor on January 17, 2017, this Court extended Ms. Taylor's deadline to file an Opening Brief and Appendix to February 3, 2017. Ms. Taylor now files this Brief and Joint Appendix pursuant to this Court's Order.

## STATEMENT OF THE ISSUES

I.    Did law enforcement officers' false threat to arrest Ms. Taylor's son, which led to Ms. Taylor's written confession, amount to coercion in violation of the Due Process Clause?

II.   Did sending unadmitted exhibits to the jury during their deliberations violate Ms. Taylor's Sixth Amendment right to a fair and impartial jury?

III.  Did the District Court's attribution of an additional 2,000 kg of marijuana to Ms. Taylor for sentencing purposes, violate her Sixth Amendment right to a jury determination under *Apprendi v. New Jersey*, when the jury was only charged with determining whether Ms. Taylor possessed 1,000 kg or more of marijuana?

## STATEMENT OF THE CASE

### I.     Factual History

On July 1, 2013, while conducting surveillance, law enforcement officers intercepted three crates of marijuana at R&L Carriers, a delivery company with a shipping office located in Maryland. J.A. at 661-62. The crates contained a total of approximately 730 kilograms of marijuana (consisting of 59 individual bales of marijuana). *Id*. The officers determined that all three crates were shipped from "the Shipping Depot" in Tucson, Arizona. J.A. at 662. Two of the crates were addressed to "Royal Gem & Mineral" in Landover, Maryland, and the third crate was addressed to "Artistique Connection" in Brentwood, Maryland. *Id*.

After discovering the marijuana, the law enforcement officers decided to obtain additional shipping records from R&L Carriers. They found 30 shipments shipped from the Shipping Depot in Tucson, Arizona to "Royal Gem & Mineral," "Artistique Connection," or "Prestige" from March 2011 through July 1, 2013, and conjectured that these shipments probably contained marijuana. J.A. at 663.

Law enforcement continued to track shipments from Arizona to Maryland over the course of the next year. Officers noted shipments using R&L Carriers in January 2014, February 2014, April 2014, July 2014, and September 2014. J.A. at 665. The officers also determined that Ms. Taylor traveled to Arizona in October 2013, January 2014, February 2014, April 2014, July 2014, and September 2014. *Id*.

While the officers never actually seized any of these shipments or opened any of the containers, they assumed each shipment contained marijuana and calculated an estimate of how much marijuana the shipments contained. J.A. at 666.

On September 30, 2014, the law enforcement officers tracked a U-Haul to a residence later identified as 5707 Axton Court, Lanham, Maryland. J.A. at 161-163. The U-Haul sat in the driveway unattended for approximately an hour. J.A. at 163. At approximately 4:45 p.m., law enforcement officers saw Ms. Taylor and another man behind the U-Haul. *Id*. The other man turned out to be Ms. Taylor's son, Ochoi Smith. *Id*. Despite having conducted surveillance on Ms. Taylor and tracking various shipments for at least one year, the officers had never seen Ms. Smith prior to September 30, 2014. J.A. at 178. In addition to never having seen Mr. Smith prior to September 30, the officers did not know he was Ms. Taylor's son. J.A. at 177. During the course of the year-long investigation, law enforcement had gathered flight records and U-Haul records, none of which mentioned Mr. Smith. J.A. at 172.

Officers saw Ms. Taylor and the man that was later determined to be Mr. Smith behind the U–Haul and the rear door was opened. J.A. at 178. Inside of the U-Haul were wooden boxes that gave no indication there was marijuana or any other drug inside. J.A. at 244.

The officers immediately detained both Ms. Taylor and her son and handcuffed them. J.A. at 172-73. Between 4:45 p.m. and 12:30 a.m., Ms. Taylor and

Mr. Smith were secured in the residence with several agents from a Joint Task Force including Agent Susannah Wood, Rodrigo Crisostomo, and Kevin Ermer. J.A. at 220. The officers interrogated Ms. Taylor, but she denied any knowledge of the contents inside the crates in the U-Haul in her driveway. J.A. at 164. The officers then sought, obtained, and a few hours later, around 9:40 p.m., executed a search warrant targeting Ms. Taylor's home, the U-Haul on her driveway, and the two other vehicles at the home. During the execution of the warrant, the officers seized 286 pounds of marijuana from the U-Haul. J.A. 142, 165, 168. They also seized additional quantities of marijuana, cash, and notebooks from Ms. Taylor's home. J.A. at 168.

The search ended at approximately 12:30 a.m. J.A. at 169. At this time, Ms. Taylor was still handcuffed and it is probable Mr. Smith was also handcuffed per standard operating procedure. J.A. at 173. Over the course of these eight hours, between 4:45 p.m. and 12:30 a.m., officers claimed to Ms. Taylor they could arrest her son in connection with this case. J.A. at 171. At end of the search, at approximately 12:30 a.m., law enforcement showed Ms. Taylor the search inventory, which included the fact that 14 bales of marijuana had been seized. J.A. at 170. After showing her that 14 bales of marijuana had been seized, officers reiterated to Ms. Taylor their claim that her son could be arrested. J.A. at 171. Faced with several officers claiming her son could be arrested, and the fact that 14 bales of

marijuana had been seized, Ms. Taylor wrote a statement purporting to take responsibility for everything recovered during the search warrant. J.A. at 245. After the officers told Ms. Taylor they could arrest her son and she wrote this statement, the officers uncuffed Mr. Smith. J.A. at 175-77.

## II.    Procedural History

On May 13, 2015, Ms. Taylor was indicted by a grand jury on conspiring to distribute and possessing with intent to distribute 1,000 kilograms or more of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841. J.A. at 14-16. Ms. Taylor was also notified that the Government would seek forfeiture under 21 U.S.C. § 853 in the event that she was convicted of the crime. *Id*. On July 8, 2015, Ms. Taylor entered a plea of not guilty. On March 14, 2016, the grand jury returned a Superseding Indictment, charging Ms. Taylor with Conspiracy to Distribute and Possess with Intent to Distribute 1000 Kilograms or More of Marijuana (Count One), in violation of 21 U.S.C. § 846, Use of a Communications Device to Facilitate Narcotics Trafficking (Counts Two and Three), in violation of 21 U.S.C. § 843(b), and Possession With Intent to Distribute 100 Kilograms or More of Marijuana (Count Four), in violation of 21 U.S.C. § 841. J.A. at 17-22.

On April 15, 2016, Ms. Taylor filed a Motion to Suppress the written statement she gave taking responsibility for the contraband at her residence, contending that the law enforcement officers coerced the statement by threatening

that they could arrest her son. J.A. at 142-49. On April 18, 2016, the Government filed an Opposition to the Motion. J.A. at 150-55. The District Court eventually denied Ms. Taylor's Motion. J.A. at 239. Ms. Taylor was tried by a jury from April 19, 2016, to April 28, 2016. Prior to the jury beginning deliberations, the jury was provided with Summary Exhibit 1, which was never admitted as evidence at trial although shown to the jury as a summary exhibit. J.A. at 459-68; 489-500. On April 28, the jury found Ms. Taylor guilty of Conspiracy to Distribute and Possess with Intent to Distribute 1000 Kilograms or More of Marijuana, two counts of Use of a Communication Device to Facilitate Narcotics Trafficking, and Possession With Intent to Distribute 100 Kilograms or More of Marijuana, in violation of 21 U.S.C. §§ 846, 843(b) and 841. J.A. at 501-02. On May 10, 2016, Ms. Taylor filed a Motion for a New Trial based upon an insufficiency of the evidence to convict her. J.A. at 9. The Government opposed the Motion on May 17, 2016, and on June 7, 2016, the District Court denied the Motion. J.A. at 9-10. On May 24, 2016, the Government filed a Motion for Forfeiture, which Ms. Taylor opposed on June 20, 2016. *Id*. The Government filed a Reply on June 22, 2016 (J.A. at 10), and the District Court issued a preliminary Order of Forfeiture.

On November 17, 2016, Ms. Taylor appeared for her sentencing hearing, during which the court sentenced her to 144 months in prison with a forfeiture order for $3,747,750.00 as a money judgment as well as an additional $30,000.00 in cash

that was seized on September 30, 2014 during the execution of the search warrant. J.A. at 594, 597, 611-12. In determining Ms. Taylor's sentence, the court began at a Base Offense Level of 32, attributing over 3,000 kg of marijuana to Ms. Taylor, and added a two-level enhancement for obstruction of justice by perjurious testimony, by discrediting Ms. Taylor's testimony during the hearing on her Motion to Suppress. J.A. at 607-11. The court also imposed a downward variance for its hesitation in adding the enhancement for obstruction, for the lack of violence in the case, and to reflect the changing policy views on possession of marijuana. *Id*.

Ms. Taylor then filed a Notice of Appeal on November 21, 2016, and an Amended Notice of Appeal on November 22, 2016. J.A. at 619-22.

## SUMMARY OF THE ARGUMENT

This Court should overturn the rulings of the District Court because its decisions violated Ms. Taylor's due process and Sixth Amendment jury trial rights.

First, the lower court improperly denied Ms. Taylor's Motion to Suppress her written statement because the law enforcement officers' baseless threat to arrest her son was coercive in violation of the Due Process Clause. Second, sending an unadmitted exhibit to the jury during their deliberations violated Ms. Taylor's Sixth Amendment right to a fair and impartial jury because it allowed the jury to consider information not part of the evidence in the case. Finally, the District Court established an incorrect Base Offense Level in violation of U.S.S.G. § 2D1.1(c)(5), imposed an improper two-level enhancement not supported by the facts in this case, and issued a forfeiture order premised on mere speculation, by attributing an additional 2,000 kg of marijuana to Ms. Taylor for sentencing purposes without submitting an element of the offense the jury. This violated Ms. Taylor's Sixth Amendment right to a jury determination under *Apprendi v. New Jersey*, because the jury was only charged with determining whether Ms. Taylor possessed 1,000 kg or more of marijuana, not whether Ms. Taylor possessed 3,000 kg or more of marijuana.

For these reasons, Ms. Taylor requests this Court reverse Ms. Taylor's conviction and remand to the District Court.

# ARGUMENT

**I.    The Government Did Not Meet Its Burden Of Establishing Ms. Taylor's Written Statement Was Given Free From Coercion Where The Officers Were Untruthful In Telling Ms. Taylor Her Son Could Be Arrested On September 30, 2014.**

### A.    Standard of Review

*De novo* is the appropriate standard of appellate review in determining whether the District Court erred in ruling that Ms. Taylor's written statement was voluntary although it was given after officers indicated they could arrest her son. "Without exception, the Court's confession cases hold that the ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110 (1985) (internal citations omitted). "We review *de novo* the legal determinations, including the existence of probable cause, underlying the district court's suppression order." *United States v. Brookins*, 345 F.3d 231, 234 (4th Cir. 2003) (internal citations omitted). Here, the District Court incorrectly reached a legal determination that there was probable cause to arrest Ms. Taylor's son. The purported existence of probable cause underpins the District Court's entire analysis as evidenced by the Court's holding that "given that there was probable cause to arrest Mr. Smith, this case falls in the category of situations where officers' truthful statements about the defendant's predicament are at issue and even though there were some element of intimidation associated with that, they do not render the statements involuntary." J.A. at 236-37. Because the District

10

Court's ruling regarding voluntariness necessarily relied on the existence of probable cause to arrest Mr. Smith, which did not exist on September 30, 2014, this Court must review this determination *de novo*.

> ## B. Threatening Ms. Taylor with the arrest of her son without probable cause rendered Ms. Taylor's written statement the product of coercion.

The coercive tactics employed by the officers to obtain Ms. Taylor's written statement violate the Fifth Amendment's Due Process Clause. "No person shall be …deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The admission of a coerced confession "vitiates [a] judgment because it violates the Due Process Clause." *Lynumn v. Illinois*, 372 U.S. 528, 537 (1963). The judgment in this case should be "vitiate[d]" – i.e., vacated - under *Lynumn*, since Ms. Taylor did not write this statement until after the police had indicated they could arrest Mr. Smith.

The coercive tactics in this case stem from the fact that officers told Ms. Taylor that her son could be arrested several times throughout their encounter. J.A. at 171. This incident happened over the span of eight hours, beginning at approximately 4:45 p.m. and ending at approximately 12:30 a.m. J.A. at 220. The Government sponsored a witness, Agent Wood, who admitted that "[t]hroughout the course" of this eight hour ordeal, the officers[1] discussed the possibility of Mr.

---

[1] Notably, Agent Wood uses the plural, "[w]e" in describing the officers that discussed with Ms. Taylor the possibility of arresting Mr. Smith. J.A. at 171.

Smith's arrest with Ms. Taylor. J.A. at 171. While the officers made these statements over the course of the eight hours, they discussed the possibility of Mr. Smith's arrest with Ms. Taylor "[m]ainly at the end" of this ordeal just before asking Ms. Taylor to write the statement. *Id.* Thus, the officers' conduct, coupled with the timing of such conduct, exemplifies the coercion that induced Ms. Taylor to write the statement. Furthermore, the District Court made a factual determination that there was intimidation associated with the officers' statements about Mr. Smith's possible arrest as evidenced by the Court's proclamation, "this case falls in the category of situations where officers' truthful statements about the defendant's predicament are at issue and **even though there were some element of intimidation associated with that**…" J.A. at 236-37. Consequently, the Government must concede that officers told Ms. Taylor that Mr. Smith could be arrested and that the District Court determined that there was an element of intimidation associated with such statements. Established jurisprudence dictates that such intimidating statements regarding family members lead to involuntary confessions.

Threats regarding family members leading to an alleged confession are vital in determining whether the resulting confession is involuntary. In *Lynum v. Illinois*, the Court found that the Petitioner's confession was involuntary as being the product of coercion where the "oral confession was made only after the police had told [the Petitioner] that state financial aid for her infant children would be cut off, and her

children taken from her, if she did not 'cooperate.'" *Lynum v. Illinois*, 372 U.S. at 534. These threats to the Petitioner's family member played a crucial role in the Court's determination that the confession was coerced. Indeed, the Court reasoned, "[t]hese threats were made while [the Petitioner] was encircled in her apartment by three police officers and a twice convicted felon who had purportedly 'set her up.' There was no friend or adviser to whom she might turn. She had had no previous experience with the criminal law, and had no reason not to believe that the police had ample power to carry out their threats." *Id*. at 534. Because the confessions were coerced, the Court held that the statements were inadmissible.

The same rationale is applicable here. Similar to *Lynum*, there were various law enforcement officers, in addition to the three officers that testified at the suppression hearing, in Ms. Taylor's home when she wrote the statement. Like *Lynum*, Ms. Taylor had no lawyer nor was there anyone from whom she could seek guidance. Similar to *Lynum*, there is no indication that Ms. Taylor had ever been interrogated by law enforcement prior to September 30, 2014. Again, like *Lynum*, Ms. Taylor had every reason to believe the officers would carry out their threat to arrest Mr. Smith given that officers had already handcuffed him. Under these similar circumstances, this Court should reach the same result reached in *Lynum*: the officers' threats to arrest Ms. Taylor's son renders her resulting incriminating statement inadmissible as they are the product of coercion.

The coercive tactic of using Ms. Taylor's son to instill fear in her is akin to the tactics deemed to have rendered a confession coercive by the Ninth Circuit in *United States v. Tingle*, 658 F.2d 1332 (9th Cir. 1981). There, the Court reasoned, "[t]he relationship between parent and child embodies a primordial and fundamental value of our society. When law enforcement officers deliberately prey upon the maternal instinct and inculcate fear in a mother that she will not see her child in order to elicit 'cooperation,' they exert [ ] 'improper influence'" and the resulting confession is involuntary. *United States v. Tingle*, 658 F.2d at 1336. Here, the officers' psychological tactics were subtle but nonetheless coercive. The officers, according to Agent Wood, told Ms. Taylor "throughout the course" of the eight hours that they could arrest Mr. Smith. J.A. at 171. The officers' motivation for making these statements is clear: they wanted to instill fear in Ms. Taylor by claiming that her son could be arrested. Such tactics led the District Court to determine there was an element of intimidation associated with the officers' statements. The officers intimidated Ms. Taylor by preying upon the fundamental parental instinct of protecting one's child. After eight hours, Ms. Taylor was unable to resist. She wrote a statement claiming responsibility and her son was immediately uncuffed and released. J.A. at 245. While the officers were ultimately successful in coercing Ms. Taylor to succumb, their psychological tactics were factually intimidating, predatory, and legally coercive.

14

> C.    *Ms. Taylor's coerced written statement remains involuntary because the officers could not have carried out the threat of arresting Mr. Smith.*

Threats to family members are improper and render a statement involuntary unless the police have probable cause to arrest the family member and thus carry out the threat. In squarely addressing this question, a District Court in New York found:

> "[s]everal other circuits, as well as several district courts in [the Second Circuit], have considered this question, however, and have all reached a similar conclusion: such a threat does not render a confession involuntary if the police have probable cause to arrest the family member and thus could lawfully carry out the threat. *See*, e.g., *United States v. Johnson*, 351 F.3d 254, 257, 260–61, 263 (6th Cir. 2003) (finding that a threat to arrest a suspect's sister was not coercive because the police had probable cause to arrest the sister); *Thompson v. Haley*, 255 F.3d 1292, 1296–97 (11th Cir. 2001) (holding that a threat to arrest a suspect's significant other did not render the suspect's murder confession involuntary where the police had probable cause to arrest the significant other); *Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir. 1986) (same); *see also United States v. Ortiz*, 499 F. Supp. 2d 224, 232–33 (E.D.N.Y. 2007) ("It is not coercive to threaten a suspect's family member with arrest to secure a Miranda waiver from the suspect if[ ] there is probable cause to arrest the family member."); *United States v. Memoli*, 333 F. Supp. 2d 233, 238 n. 3 (S.D.N.Y. 2004) (finding a confession voluntary where the defendant's girlfriend, whom police threatened to arrest, was "liable for arrest for, at the very least, constructive possession of illegal firearms"). Thus, the Sixth Circuit, for example, found a suspect's confession involuntary where the police threatened to arrest his mother and girlfriend despite having no probable cause to do so. *See United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993); *see also United States v. Bolin*, 514 F.2d 554, 560–61 (7th Cir. 1975) (holding, in the

15

> Fourth Amendment context, that a defendant's consent to search was not voluntary where the police threatened to arrest his girlfriend despite having no basis for suspecting her of wrongdoing); *United States v. Andrews*, 847 F. Supp. 2d 236, 249–50 (D. Mass. 2012) (holding that an unfounded threat to arrest a suspect's elderly mother rendered the suspect's confession involuntary).

*United States v. Ortiz*, 943 F. Supp. 2d 447, 456–57 (S.D.N.Y. 2013). Although it does not appear that the Fourth Circuit has squarely addressed this issue, the overwhelming authority finds that a statement is involuntary where a state actor tells a suspect that officers could arrest a family member where there was no probable cause for such an arrest.

There was no probable cause to arrest Mr. Smith. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (internal citations omitted). Probable cause must be supported by more than a mere suspicion. *Id.* at 434. "That one is merely present 'at the scene of a crime or in the company of a person engaging in criminal activity' is not, by itself, sufficient to establish probable cause. Nor is evidence of 'a person's mere propinquity to others independently suspected of criminal activity,' without more, adequate to establish probable cause. Seemingly innocent activity, however, though not conclusive of probable cause, 'may provide the basis for a showing of probable cause' when considered in the context of all of the surrounding circumstances." *Id.* (internal

16

citations omitted); *see also*, *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir. 1983) ("it is settled that mere association with a known or suspected criminal, or mere presence in that person's automobile, does not create probable cause to arrest. Nor is probable cause established by the presence of a person in a location known to be frequently involved in narcotics sales or other crimes."). Here, there was no probable cause for officers to arrest Mr. Smith for several reasons. First, despite having surveilled Ms. Taylor's movements for several months, the police had never seen Mr. Smith prior to September 30, 2014. Second, the officers never described having seen Ms. Taylor with anyone matching Mr. Smith's description prior to September 30, 2014. This complete lack of any personal descriptive information relating to Mr. Smith is evidence of a lack of probable cause to arrest him. Third, Agent Wood squarely indicated that on September 30, 2014, officers were not sure whether Mr. Smith was involved in a distribution conspiracy. J.A. at 165. Agent Wood's admission is illuminating in that it highlights the Government's lack of information related to Mr. Smith's purported involvement in a drug conspiracy as opposed to mere presence with Ms. Taylor. Government agents often use terms such as "person of interest," "target," "witness," or "suspect" when describing someone related to a drug conspiracy. Here, Agent Wood admits the officers did not know whether Mr. Smith was involved nor did Agent Wood use any law enforcement term to describe Mr. Smith's purported involvement; this is because officers did not have

17

probable cause to believe Mr. Smith had committed any crime. J.A. at 165. Fourth, underscoring the fact that officers did not consider Mr. Smith to be a suspect is the fact that officers immediately questioned Ms. Taylor about the contents of the U-Haul but opted not to question Mr. Smith. J.A. at 164-65. If Mr. Smith were a suspect, the officers would have attempted to question him as they attempted to question Ms. Taylor. The officers opted not to attempt to question Mr. Smith because he was not a suspect. The officers had no idea as to who Mr. Smith was at the time they handcuffed him. Fifth, the officers never actually arrested Mr. Smith. As a practical matter, officers would not simply allow a suspect to walk away from a multi-kilogram drug conspiracy if the officers actually had probable cause to arrest the suspect. The officers would have arrested Mr. Smith if there was probable cause to do so. They would not allow him to remain free had there been probable cause to believe he was a co-conspirator in a multi-million dollar conspiracy. The officers did not arrest Mr. Smith because there was no probable cause to do so.

Indeed, the only information officers had about Mr. Smith on September 30, 2014 was that he was on the scene attempting to help his mother move a large crate. J.A. at 177-78. There is no reason to believe he knew the contents of the crates. Even if Mr. Smith actually touched one crate, despite the fact that no witness claims to have seen him touch a crate, the crates appeared to be wooden crates from the outside. There were no indications there was marijuana or any other illegal

18

substance therein. The crates were tightly sealed and there was also no evidence demonstrating that Mr. Smith was in possession of the requisite tools to open any crate. Thus, there was no indication Mr. Smith had any knowledge of the contents of the crates or that he had any plans to open the crates. Thus, there was no probable cause to arrest Mr. Smith.

The Government may argue that Mr. Smith's vehicle was seen in July 2014, providing the basis for probable cause. Any such argument should be summarily rejected. The Government cannot meet its burden of establishing probable cause on this basis because there is no information as to the date on which the officers learned the vehicle at issue was registered to Mr. Smith. Officers must have knowledge of the facts and circumstances supporting probable cause at the moment when the arrest would be made. *See Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) ("Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.") Here, there is no information as to whether the officers learned in July 2014 (the date on which Mr. Smith's vehicle was seen), September 30, 2014 (the day Ms. Taylor was arrested), or April 2016 (the date of the motions hearing) that Mr. Smith was the

registered owner. This lack of evidence as to the date on which the officers learned the vehicle was registered to Mr. Smith is particularly important given that the officers did not know who Mr. Smith was or his relation to Ms. Taylor when the officers handcuffed Mr. Smith.  Had the officers known Mr. Smith's name prior to September 30, 2014, it is probable the officers would have investigated his identity and known his identity prior to September 30, 2014 by tracing his vehicle tags and determining the owner of the vehicle. Further, there is no description of anyone in the vehicle purporting to match Mr. Smith. There is nothing to suggest Mr. Smith used the vehicle to transport marijuana or that Mr. Smith was present at the scene in July 2014. The officers' complete ignorance of Mr. Smith upon handcuffing him on September 30, 2014, the Government's failure to describe the date on which officers learned the vehicle was registered to Mr. Smith, the lack of any prior identification of Mr. Smith in relation to Ms. Taylor, coupled with the lack of evidence suggesting Mr. Smith ever transported marijuana for Ms. Taylor underscores the lack of probable cause to arrest Mr. Smith on September 30, 2014. Hence, the officers lacked probable cause to arrest Mr. Smith, although they told Ms. Taylor they could do so.   Accordingly, under *Ortiz* and the many cases cited therein, Ms. Taylor's resulting statement was involuntary and should have been suppressed. The District Court erred in denying the Motion to Suppress.

## II.    An Improper Exhibit Sent To The Jury During Deliberations Violated Ms. Taylor's Sixth Amendment Right To An Impartial Jury.

### A.    *Standard of Review*

A criminal defendant is entitled to a presumption of prejudice where unadmitted evidence is made available to the jury during deliberations. *United States v. Barnes*, 747 F.2d 246, 251 (4th Cir. 1984); *see also*, *United States v. Lentz*, 383 F.3d 191, 219 (4th Cir. 2004); *United States v. Greene*, 834 F.2d 86 (4th Cir. 1987). The Government has the burden of proving that the jury's consideration of the improper evidence is harmless. *United States v. Barnes*, 747 F.2d at 251.

### B.    *The District Court erred by not requiring the Government to meet its burden of proof that the exhibit was harmless.*

Ms. Taylor's Sixth Amendment right to an impartial jury was violated when the District Court allowed unadmitted exhibits to improperly enter the jury room during deliberations where the Government did not meet its burden of establishing the exhibit's alleged harmlessness. "The Sixth Amendment right to jury trial guarantees to the criminal accused a fair trial by a panel of impartial, 'indifferent jurors.'" *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The inadvertent nature of the submission of the exhibit into the jury room does not negate Ms. Taylor's presumption of prejudice. *See United States v. Lentz*, 383 F.3d 191, 219 (4th Cir. 2004) (internal citations omitted) ("It is not necessary that the defendant prove that the prejudicial evidence was intentionally placed before the jury to obtain a new

trial; accidental or inadvertent submission of the materials will suffice."). Because Ms. Taylor is presumed to have been prejudiced, the Government bore the burden of proof of disproving prejudice.

The District Court erred by never requiring the Government to establish harmlessness. The Government never proffered whether Summary Exhibit 1 would have been admissible as an exhibit. Also, there was no proffer as to the reason the exhibit was only used as a demonstrative as opposed to an admitted exhibit. The District Court made no legal determination as to whether the Government met its burden of proof. Instead of requiring the Government to articulate harmlessness, the District Court asked both parties for proposed solutions. J.A. at 459-68; 489-500. Before asking the parties for proposed solutions, the District Court was required to determine whether the Government met its burden of proof to demonstrate harmlessness. Thus, the District Court employed the incorrect legal standard. In failing to follow the correct legal standard, the District Court did not reach any legal determination as to whether the Government met its burden. Accordingly, Ms. Taylor is entitled to a new trial.

**III.    This Court Should Overturn The District Court's Sentence Because The Court Established An Incorrect Base Offense Level In Violation Of U.S.S.G. § 2D1.1(c)(5), Imposed An Improper Two-Level Enhancement Not Supported By The Facts In This Case, And Issued A Forfeiture Order Premised On Mere Speculation.**

Ms. Taylor requests this Court to overturn the District Court's sentencing decisions because: 1) the court began its sentencing calculations at a Base Offense Level of 32 even though the jury convicted Ms. Taylor of only possessing over 1,000 kg of marijuana, which, pursuant to U.S.S.G. § 2D1.1(c)(5), sets the Base Offense Level to 30; 2) the court added a two-level sentence enhancement for obstruction of justice even though Ms. Taylor's testimony in question was not made falsely or with a willful intent to deceive; and 3) the court issued a forfeiture order of over $3 million based on shipments the Government actually never seized.

A.    *Standard of Review*

In evaluating a trial court's sentencing decision, the appropriate standard of review for a court of appeals is abuse of discretion. *United States v. Curry*, 523 F.3d 436, 439 (4th Cir. 2008). In reaching this decision, this Court adopted the ruling of the Supreme Court of the United States, stating: "We now hold that, while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences-whether inside, just outside, or significantly outside the Guidelines range-under a deferential abuse-of-discretion standard." *Curry*, citing *Gall v. United States*, 552 U.S. 38 (2007).

23

Under this standard, this Court may overturn the sentence of the District Court if it finds that the court abused its discretion in making its decisions.

> **B.** **_The District Court improperly began its sentencing calculations at a Base Offense Level of 32, because the jury convicted Ms. Taylor of only possessing over 1,000 kg of marijuana, which, pursuant to U.S.S.G. § 2D1.1(c)(5), sets the Base Offense Level to 30._**

The District Court improperly attributed over 3,000 kg of marijuana to Ms. Taylor to reach a Base Offense Level of 32 because first, the jury only found 1,000 kg or more of marijuana attributable to Ms. Taylor, not 3,000 kg or more, and second, the court's calculation relied on shipments that were never seized by the Government, but merely speculated to contain marijuana.

This Court should reject the District Court's holding that 3,000 kg or more of marijuana are attributable to Ms. Taylor because such a finding was never made by the finder of fact. J.A. at 501-02. The Government never charged Ms. Taylor with possessing over 3,000 kg of marijuana in its indictment. J.A. at 14-22. Therefore, the issue of whether or not Ms. Taylor possessed over 3,000 kg of marijuana never reached the finder of fact. Furthermore, the Government did not prove beyond a reasonable doubt at trial, that Ms. Taylor possessed over 3,000 kg of marijuana. (Rather, its argument was premised on speculation based on shipments never seized, argued _infra_.) The Government only charged Ms. Taylor with possessing over 1,000 kg of marijuana, and that was the charge presented to the jury. J.A. at 501-02. Because the issue of possession of 3,000 kg or more was never raised, it was

improper for the District Court to attribute over 3,000 kg of marijuana to Ms. Taylor without a finding of fact by the jury.

This Court has held that the government must prove beyond a reasonable doubt the weight of the narcotics attributable to a defendant. *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001); *see also Apprendi v. New Jersey*, 530 U.S. 466 (2000). This Court further wrote, "the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt." *Promise*, 255 F.3d at 156-57 (internal citations omitted). Drug quantities are elements of an offense because they determine the maximum penalty that may be imposed on a particular defendant. *Id*. at 156. For example, "an individual who possesses with the intent to distribute an identifiable but unspecified quantity of a schedule I or II drug is subject to a term of imprisonment of no more than 20 years." *See* 21 U.S.C.A. § 841(b)(1)(C).

Thus, the amount of a drug possessed by a defendant often determines sentencing penalties, which is why, according to *Promise*, the drug quantity is treated as an element of the offense and must be proven beyond a reasonable doubt. In analyzing this Court's opinion, it then logically follows that a court may not sentence a defendant based upon a drug quantity that was never proved or charged. Yet, this is exactly the scenario in Ms. Taylor's case. She was never charged with

possessing 3,000 kg or more of marijuana, and accordingly, the issue was not submitted to the trier of fact to resolve beyond a reasonable doubt. Ms. Taylor was convicted of possessing only 1,000 kg or more of marijuana, so pursuant to *Promise*, this Court should reject the lower court's attempt to attribute 3,000 kg or more of marijuana to Ms. Taylor after the verdict was already delivered. With a conviction of possession of 1,000 kg or more of marijuana, U.S.S.G. § 2D1.1(c)(5) dictates that a sentencing court set the Base Offense Level at 30, and that is why Ms. Taylor requests this Court to overturn the set Base Offense Level of 32.

Furthermore, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court ruled that a criminal defendant has a right to a jury trial not only on the question of guilt or innocence, but also regarding any fact used to increase the defendant's sentence beyond the maximum otherwise allowed by statutes or sentencing guidelines. In *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the Court expanded on *Apprendi* and *Blakely* by ruling that a defendant's right to a jury applies to any fact that would increase a defendant's sentence beyond the minimum otherwise required by statute:

> We conclude that this distinction is inconsistent with our decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and with the original meaning of the Sixth Amendment. Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. *See id.*, at 483, n. 10, 490, 120 S. Ct. 2348. Mandatory minimum sentences increase the penalty for a

26

crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

*Alleyne*, 133 S. Ct. at 2155. Based on the Supreme Court's analysis, because the attribution of the 3,000 kg of marijuana to Ms. Taylor increased her sentence, the issue should have been submitted to a jury.

Alternatively, even if this Court were to follow the District Court's reasoning and classify drug quantity as a sentencing factor that needs to be proven only by a preponderance of evidence, the Court should still hold that the District Court improperly decided that the Government had met its burden. The Government's calculation of the total kilograms of marijuana in Ms. Taylor's possession relied on shipments between March 2011 and October 2012, which were never seized. J.A. at 671. In addition to lack of tangible evidence, the Government offered no wiretaps, no surveillance footage, no trips to Arizona, and no witnesses, including James Willis, demonstrating that those shipments contained marijuana, and if so, how much marijuana. Rather, the Government's rationale that the shipments contained marijuana was premised on seized shipments and crates (the following year), which contained marijuana. Accordingly, without any concrete evidence, it was impossible to prove—and the Government failed to prove—what each of the aforementioned shipments contained, whether they even contained any marijuana, and if so, how

much marijuana, and how much of the weight of those shipments could be attributed to non-controlled items.

Instead, the Government asked the court to **assume** an additional 1600 kg of marijuana attributable to Ms. Taylor between March 2011 and October 2012: "**Assuming**, at a minimum, each of the 16 uncharged shipments contained 100 kilograms of marijuana, Taylor would be responsible for an additional 1600 kilograms of marijuana. J.A. at 671, *emphasis added*. No standard of proof exits that would have allowed the District Court to make assumptions in order to determine the appropriate sentence. In fact, it was wholly improper of the Government to ask the court to make *assumptions* about the contents of crates and the weight of those contents rather than offering proof that rendered such a guesstimate more likely than not, and it was also wholly improper of the District Court to accept that assumption rather than hold the Government to its burden. Thus, because the Government, by definition, failed to meet its burden of proving that (1) marijuana was in the crates between March 2011 and October 2012, or (2) the weight of any purported marijuana at issue during that timeframe, the District Court incorrectly attributed 3,000 or more kg of marijuana to Ms. Taylor.

Pursuant to this analysis, Ms. Taylor was on convicted of possessing 1,000 kg or more of marijuana, where U.S.S.G. § 2D1.1(c)(5) mandates a Base Offense Level

of 30. For these reasons, Ms. Taylor requests this Court to find that the District Court incorrectly set her Base Offense Level to 32, when it should have been set at 30.

C.    *The District Court improperly added a two-level sentence enhancement for obstruction of justice because Ms. Taylor's testimony in question was not made falsely or with a willful intent to deceive.*

This Court should hold that the District Court's two-level sentence enhancement for perjurious testimony was improper because Ms. Taylor never offered testimony with a willful intent to deceive. The testimony in question involves Ms. Taylor's statements that the arresting officers, during the execution of the search of her residence, yelled at Ms. Taylor and threatened to arrest her son if she did not sign a statement admitting to her guilt. J.A. at 575-76. According to this Court, three elements must be satisfied to impose a two-level enhancement for obstruction of justice based on a defendant's perjurious testimony: 1) the defendant must have offered false testimony; 2) the testimony must have concerned a material matter; and 3) the defendant must have given the testimony with a willful intent to deceive. *United States v. Perez*, 661 F.3d 189, 192 (4th Cir. 2011).

Here, Ms. Taylor maintains that the officers yelling at her and conversing with her in an aggressive manner were not false statements, and the District Court's refusal to give credit to her testimony was erroneous. J.A. at 575-76. However, even if a court were to find that the officers' manner did not rise to the level of aggression, if Ms. Taylor perceived that the officers were acting aggressively toward her, then

29

her statements could not have been made with a willful intent to deceive. The statements were based on her knowledge and her perception, rather than an intent to deceive the court, and for the District Court to hold her perception as an intent to deceive was incorrect. Thus, these statements fail to satisfy both the first and third requirements of the test for perjurious testimony.

Furthermore, Ms. Taylor maintains that her arresting officers did threaten to arrest her son if she did not sign a statement admitting to her guilt. J.A. at 171. She also maintains that such statements were not made with an intent to deceive. The District Court erroneously found that these statements were false and made with an intent to deceive. Therefore, Ms. Taylor contends that her testimony does not satisfy the first and third elements of the test for perjurious testimony. Moreover, for the District Court to counter Ms. Taylor's testimony with an accusation of perjury and an intent to deceive, creates a chilling effect on her constitutional right to testify, which this Court should not uphold.

Because Ms. Taylor's testimony fails to satisfy the elements for perjurious testimony and obstruction of justice, she requests this Court to overturn the two-level sentence enhancement for perjurious testimony that the District Court imposed.

    *D.*    *The District Court improperly calculated a forfeiture amount of $3,747,750.00 because it speculated the presence and weight of marijuana in the shipments the Government failed to seize.*

The District Court incorrectly reached the forfeiture amount of $3,747,750.00 because it attributed several thousand kilograms of purported marijuana to Ms. Taylor that were not proven by the Government.

While the Government did seize several shipments that it attributed to Ms. Taylor for the possession of 1,000 kg or more charge, it also tracked many more shipments that it never seized. J.A. at 666. Using that evidence, the Government speculated that each shipment it tracked contained marijuana and speculated the weight of marijuana in each shipment, even though the Government never seized any of those shipments and had no conclusive evidence of what those shipments contained, if they contained marijuana, and if so, how much marijuana, and how much of the weight of those shipments could be attributed to non-controlled items. *Id.* Rather, the Government guessed the items contained in the shipments and asked the District Court to assume as correct its proposed weights of marijuana. *Id.* For example, the Government asked the court to assume 1600 kg of marijuana attributable to Ms. Taylor between March 2011 and October 2012: "Assuming, at a minimum, each of the 16 uncharged shipments contained 100 kilograms of marijuana, Taylor would be responsible for an additional 1600 kilograms of marijuana." J.A. at 671. The District Court accepted this analysis and calculated a

forfeiture amount based on shipments that the Government actually had not seized and did not have sufficient proof of what was inside those shipments and how much.

Attributing several thousand additional pounds of marijuana to Ms. Taylor and holding her accountable for a forfeiture amount based on that attribution is entirely unfair to Ms. Taylor, because the calculation is based on speculation, not concrete evidence. Because the district court placed such a high burden on Ms. Taylor without substantial proof, Ms. Taylor requests this Court to overturn the amount of forfeiture that is based on mere speculation.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Taylor respectfully requests this Court to overturn the rulings of the United States District Court for the District of Maryland.

/s/ Jason G. Downs
Jason G. Downs
Rima A. Kikani (*Admission Pending*)
MURPHY, FALCON & MURPHY, P.A.
One South Street, 23rd Floor
Baltimore, MD  21202
(410) 951-8744

*Counsel for Appellant*

February 3, 2017

## REQUEST FOR ORAL ARGUMENT

The Defendant-Appellant respectfully requests oral argument in this case due to the complexity of the facts and issues presented.

/s/ Jason G. Downs
Jason G. Downs
Rima A. Kikani (*Admission Pending*)
MURPHY, FALCON & MURPHY, P.A.
One South Street, 23rd Floor
Baltimore, MD  21202
(410) 951-8744

*Counsel for Appellant*

# ADDENDUM

**U.S.S.G. § 2D1.1:** Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy

### § 2D1.1 (c)(5):

**(5)**                                                                 **Level 30**
- At least 1 KG but less than 3 KG of Heroin;
- At least 5 KG but less than 15 KG of Cocaine;
- At least 280 G but less than 840 G of Cocaine Base;
- At least 1 KG but less than 3 KG of PCP, or at least 100 G but less than 300 G of PCP (actual);
- At least 500 G but less than 1.5 KG of Methamphetamine, or
- At least 500 G but less than 1.5 KG of Amphetamine, or at least 50 G but less than 150 G of Amphetamine (actual);
- At least 50 G but less than 150 G of Methamphetamine (actual), or at least 50 G but less than 150 G of "Ice";
- At least 10 G but less than 30 G of LSD;
- At least 400 G but less than 1.2 KG of Fentanyl;
- At least 100 G but less than 300 G of a Fentanyl Analogue;
- At least 1,000 KG but less than 3,000 KG of Marihuana;
- At least 200 KG but less than 600 KG of Hashish;
- At least 20 KG but less than 60 KG of Hashish Oil;
- At least 1,000,000 but less than 3,000,000 units of Ketamine;
- At least 1,000,000 but less than 3,000,000 units of Schedule I or II Depressants;
- At least 62,500 but less than 187,500 units of Flunitrazepam

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with type-volume limits because, excluding the parts

of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure

statement, table of contents, table of citations, statement regarding oral

argument, signature block, certificates of counsel, addendum, attachments):

this document contains <u>7,713</u> words.

2.    This document complies with the typeface requirements because:

this document has been prepared in a proportional spaced typeface
using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


Dated:  February 3, 2017             <u>/s/ Jason G. Downs             </u>
                                     Jason G. Downs

                                     *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on February 3, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all the registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

<u>/s/ Shelly N. Gannon</u>
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA  23218
(804) 249-7770
shelly@gibsonmoore.net